IN THE INTEREST OF K.W.
No. 27709.
Intermediate Court of Appeals of Hawaii.
February 16, 2007.
On the briefs:
Herbert Y. Hamada, for Mother-Appellant.
Susan B. Brandon and Mary Anne Magnier, Deputy Attorneys General, for Petitioner-Appellee.

SUMMARY DISPOSITION ORDER
BURNS, C.J., LIM and FOLEY, JJ.
The mother (Mother) of K.W., a female born on July 11, 2002, appeals from (1) the October 20, 2005 Order Awarding Permanent Custody terminating Mother's parental rights and duties pertaining to K.W., and (2) the December 14, 2005 Orders Concerning Child Protective Act denying Mother's November 16, 2005 motion for reconsideration. Both orders were entered in the Family Court of the First Circuit by Judge Bode A. Uale.
In a Summary Disposition Order entered on October 13, 2006, in related appeal Nos. 27608, 27609, and 27610, this court stated in part:
Mother-Appellant (Mother) gave birth to the following four children: J.C. on March 28, 1995; A.B. on November 21, 1996; A.W. on August 27, 1998 and D.W. on October 24, 1999. On February 14, 2001, all four children were placed in foster custody. On April 3, 2002, the family court terminated its jurisdiction over the four children.
On July 11, 2002, Mother gave birth to a fifth child, K.W. On November 14, 2003, "Mother signed a DHS Voluntary Placement Agreement for the [five] children's placement in foster care." On January 5, 2004, Mother revoked the voluntary placement agreement and the Honolulu Police Department took protective custody of the five children. On January 8, 2004, the State of Hawaifi. Department of Human Services (the DHS) filed petitions for temporary foster custody of the five children. The petitions were granted on January 12, 2004.
The children were returned to Mother and placed on family supervision on the following dates: K.W. on January 30, 2004; J.C. and A.B. on February 18, 2004; and A.W. and D.W. on June 25, 2004. On October 8, 2004, A.B. was removed from the family home. On October 14, 2004, the Kapiolani Child Protection Center Multidisciplinary Team recommended that all five children be removed from the family home because Mother and the childrens' father were inadequate caretakers and the prognosis for change was poor. On October 18, 2004, A.W. and D.W. were removed from the family home. On December 22, 2004, the DHS moved for permanent Custody of A.B., A.W., and D.W. On January 28, 2005, J.C. and K.W. were removed from the family home.
On February 14 and 17, 2005, Judge Kenneth E. Enright presided over a trial. In the cases of J.C. and K.W., the issue was foster custody. Daniel E. Pollard, an attorney with the Legal Aid Society and the guardian ad litem of the five children, recommended the termination of Mother's parental rights to A.B., A.W., and D.W., the return of J.C. to Mother under family supervision, and the continuation of foster custody of K.W. At the conclusion of the trial, Judge Enright entered orders awarding permanent custody of A.B., A.W., and D.W. Judge Enright also entered orders continuing foster custody and scheduling a service plan hearing for J.C. and K.W.
On February 28, 2005, in each of the cases other than J.C., Mother filed a motion for reconsideration of "the orders awarding permanent custody and granting foster custody made on February 17, 2005 by the Honorable Kenneth Enright." Judge Enright's medical condition caused his inability to decide these motions for reconsideration. On October 19, 2005, Judge Bode A. Uale entered orders denying these motions.
Meanwhile, on July 8, 2005, the DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan for K.W. After a trial on October 19 and 20, 2005, Judge Uale entered an order terminating Mother's parental rights to K.W. On November 16, 2005, Mother filed a motion for reconsideration. This motion has not been decided.
On November 17, 2005, Mother filed notices of appeal from the orders entered by Judge Enright on February 17, 2005 and the orders entered by Judge Uale on October 19, 2005. On January 3, 2006, Judge Enright entered Findings of Fact and Conclusions of Law.
On January 24, 2006, the Hawaii Supreme Court consolidated appeal nos. 27608, 27609, and 27610, under appeal no. 27608. On March 2, 2006, Judge Uale entered Findings of Fact and Conclusions of Law regarding K.W. This appeal was assigned to this court on June 20, 2006.
Mother's opening brief states that "[tihis appeal challenges the awarding of permanent custody for the minors A.B., A.W. and D.W. and foster custody of K.W." Consistent with the notices of appeal, the opening brief challenges Judge Enright's February 17, 2005 orders and Judge Uale's October 19, 2005 orders, but not Judge Uale's October 20, 2005 order terminating Mother's parental rights to K.W. The answering brief says that "[t]his is an appeal by the mother of five children from the termination of her parental rights to three of them[.]" The answering brief ignores Mother's appeal from "the awarding of . . . foster custody of K.W."
Although Mother is not challenging Judge Uale's October 20, 2005 order terminating Mother's parental rights to K.W., her reply brief notes that "[t]he First Supplemental Record on Appeal filed on March 2, 2006 under S.C. No. 27610 lists the transcripts of October 19, 2006 and October 20, 2005 before the Honorable Bode Uale."
In accordance with Hawaii Rules of Appellate Procedure Rule 35, and after carefully reviewing the record and the briefs submitted by the parties, and duly considering and applying the law relevant to the issues raised and arguments presented, we hold:
(1) Mother's November 16, 2005 motion for reconsideration of Judge Uale's October 20, 2005 order terminating her parental rights to K.W. has not been decided, and Mother did not appeal from this order;
(2) Judge Enright's February 17, 2005 order continuing the DHS's foster custody of K.W. is not an appealable order and this court does not have appellate jurisdiction to decide Mother's appeal of it;
(3) The challenged findings of fact entered by Judge Enright are not clearly erroneous;
(4) The statement that "[t]he [DHS] failed to provide [Mother] a timely psychological evaluation as ordered on January 12, 2004" is a misrepresentation of the record;[1]
(5) Judge Enright did not reversibly err when he entered orders terminating Mother's parental rights regarding A.B., A.W., and D.W.;
(6) Notwithstanding the unavailability of a transcript of the February 14 and 17, 2005 trial, Judge Uale was authorized to decide Mother's motions for reconsideration;[2] and
(7) Judge Uale did not reversibly err when he denied Mother's motions for reconsideration of Judge Enright's February 17, 2005 orders. This is so notwithstanding the fact that he was informed at the hearing on the motion for reconsideration that J.C. had been returned to Mother and J.C.'s case was closed.[3]
Therefore, IT IS HEREBY ORDERED (1) that appeal no. 27610 is dismissed for lack of appellate jurisdiction and (2) the February 17, 2005 Order Awarding Permanent Custody and the October 19, 2005 order denying motion for reconsideration in appeal nos. 27608 and 27609 are affirmed.
The October 20, 2005 Order Awarding Permanent Custody ordered compliance with the July 4, 2005 Permanent Plan, the goal of which is the adoption of K.W. The December 14, 2005 Orders Concerning Child Protective Act denied Mother's November 16, 2005 motion for reconsideration. On January 13, 2006, Mother filed a notice of appeal. On March 2, 2006, Judge Uale entered Findings of Fact and Conclusions of Law. These Findings of Fact state in part:
9. Although Mother's ability to provide a safe home for [J.C.] is marginal, he has been functioning much better in her care than he would have in foster care.
. . . .
15. Mother moved to California with [J.C.] in September of 2005.
. . . .
26. When Mother's divorce from Father became final, Mother lost her military medical coverage and enrolled in the Quest program with Kaiser coverage.
27. Mother was urged by DHS and ordered by the court to make every effort to change her medical insurance from Kaiser to another provider because very high motivation is usually required for a CPS client to obtain mental health services from the Kaiser program, and Mother's motivation is not very high.
. . . .
35. After a psychological examination held April 29, 2005, Dr. Labasan's clinical impressions of Mother were Axis I: Major Depressive Disorder by history per report; In partial remission per self report; Axis II: Personality Disorder Not Otherwise Specified (Avoidant and Dependent personality characteristics lead to impairment in functioning as a parent).
. . . .
50. Mother acknowledged to Ms. Gabat that she realized that by choosing to leave Hawaii she was in effect abandoning her efforts to reunify with [K.W.]
. . . .
60. Mother has resisted and refused to participate in individual psychotherapy which has been available to her throughout the DHS intervention, especially from the period February 17, 2005 to October 20, 2005.
. . . .
68. [J.C.] needs all of Mother's attention and efforts in maintaining stability and parenting him completely absorbs Mother's parenting abilities and capacity, given his very high needs and her very significant limitations.
In this appeal, Mother
1. Challenges findings of fact nos. 42, 59, 62, 63, 64, 65, 66, 70, 72, 73, 74, 75, 80, 81, and 88, and conclusions of law nos. 1, 2, and 3;
2. Contends that "[t]he evidence is in favor of [Mother's] ability to parent her children";
3. Contends that the testimony of Ms. Dana and Dr. Labasan establish that Mother is capable of caring for her children;
4. Contends that DHS failed to provide Mother a timely psychological evaluation as ordered on January 12, 2004, and that Mother was not given the evaluation until August 29, 2005;
5. Alleges the following reasons for finding of fact no. 60: Mother was busy caring for J.C.; Ms. Dana's contract to provide psychotherapy to Mother expired in March 2005; Mother did not have appropriate medical insurance until July 2005; Mother left for California in September 2005;
6. Contends that the Permanent plan is not in the best interest of K.W.; and
7. Contends that this appeal presents the following questions:
1. Whether the evidence clearly and convincingly establishes that [Mother] cannot provide a safe family home for K.W. when [Mother] is providing a safe home for J.C. from April 20, 2005.
2. Whether the evidence is clear and convincing that [Mother] cannot provide a safe family home for both J.C. and K.W.
In accordance with Hawai'i Rules of Appellate Procedure Rule 35, and after carefully reviewing the record and the briefs, and duly considering and applying the law relevant to the issues raised and arguments presented,
IT IS HEREBY ORDERED that we affirm (1) the October 20, 2005 Order Awarding Permanent Custody, and (2) the December 14, 2005 Orders Concerning Child Protective Act.
NOTES
[1] The Findings of Fact (FsOF) entered by Judge Kenneth E. Enright (Judge Enright) on January 3, 2006, state in part:

165. In a psychological evaluation conducted March 23, 2001, Mother was diagnosed as suffering from Adjustment Disorder with Mixed Anxiety and Depressed Mood.
. . . .
185. After the initial hearing where DHS stated its intention to refer Mother for another psychological evaluation, DHS determined that another psychological evaluation of Mother was not necessary to make an appropriate service plan.
186. The Team did not recommend another psychological evaluation for Mother in March, 2004 or October, 2004, based on her lack of progress and motivation.
187. There is no basis to conclude that another psychological evaluation of Mother in 2004 would have resulted in any different service plan recommendations for her.
[2] Hawaii Family Court Rules Rule 63 (2006) states:

Disability of judge.
If by reason of retirement, death, sickness, other disability, or absence from the State, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a decision is announced and filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that those duties cannot be performed because that judge did not preside at the trial or for any other reason, the replacement judge has the discretion to grant a new trial.
[3] The FsOF entered by Judge Enright on January 3, 2006, state in part:

42. [J.C.] has been diagnosed as suffering from Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder.
. . . .
52. For much of the time the family has been under court jurisdiction, Mother has been the person best able to de[-]escalate and manage (J.C.'s) behavior.
. . . .
55. Although [J.C.'s] behavior is very challenging to Mother, every effort was made to keep him in the family home because he seems to be more emotionally stable residing with Mother than anywhere else.
. . . .
58. DHS did not remove [J.C.] from the family home in October of 2004 as recommended by the Team, on the advice of other service providers who were concerned that [J.C.'s] psychological problems and extreme opposition to being in foster care created a very high risk of emotional breakdown and rejection in foster care, making continued placement with Mother the lesser of two undesirable choices.
. . . .
225. If Mother became able to provide a safe family home for [J.C.] it is reasonably foreseeable that providing for [J.C.] would completely absorb Mother's parenting abilities and capacity, given his special needs and her significant limitations.